IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRANT IMPORTING & )
DISTRIBUTING CO., INC., et al, )
 )
      **Plaintiffs,** )
 )
      **v.** )    No. 09 C 6118
 )
AMTEC INTERNATIONAL OF NY )
CORP., )
 )
      **Defendant.** )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Amtec International of NY Corp.'s (Amtec) motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Plaintiffs are wholesale distributors of beer products. Plaintiffs allege that from around April 2005 through late 2007, Plaintiffs purchased Zywiec Beer (Zywiec) from its United States importer, Advanced Brands & Importing Co., Inc.,

1

d/b/a Star Brands Imports (Star Brands). Plaintiffs state that they each sold Zywiec to alcoholic beverage retailers who were located in Plaintiffs' respective exclusive geographic territories in northern Illinois. Plaintiffs allege that two of Plaintiffs, along with two other beer distributors who are not parties to the instant action, "collectively paid Star Brands $528,000 for their exclusive rights to distribute" Zywiec. (Compl. Par. 2). Plaintiffs contend that pursuant to the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720/1 et seq. (BIFDA), Star Brands could only terminate Plaintiffs' right to distribute Zywiec for good cause, after making good faith efforts to resolve any disagreements and after Plaintiffs failed to cure any alleged performance deficiencies.

Plaintiffs allege that in early 2008, Amtec became the new importer of Zywiec. According to Plaintiffs, Amtec refused to sell Zywiec to Plaintiffs and appointed European Beer Importers, Inc. (European), an affiliate of Amtec, to be the only Zywiec distributor in the territories that had formerly been exclusively serviced by Plaintiffs. Plaintiffs state that, as a consequence of Amtec's actions, on February 28, 2008, Plaintiffs and other beer distributors brought suit against Amtec and European (2008 Action), seeking, among other things, a temporary restraining order (TRO) preventing Amtec and European from importing and selling Zywiec within Plaintiffs' exclusive sales territories, and a declaratory judgment finding that Amtec

violated BIFDA and requiring Amtec to continue to sell Zywiec to Plaintiffs for Plaintiffs' wholesale distribution in their respective territories.

Plaintiffs state that the 2008 Action was similarly "predicated on the provisions of BIFDA that prevent a brewer or successive brewer from cancelling, failing to renew, or otherwise terminating a distribution agreement without first (a) giving the affected [d]istributors a complete statement of the reasons therefore, (b) making good faith efforts to resolve disagreements, and (c) giving the [d]istributors an opportunity to cure the stated reasons for termination." (Compl. Par. 6). Plaintiffs state that the trial court denied the motion for a TRO after finding that Amtec was not a "successor brewer" under BIFDA since there was no evidence to suggest that Amtec acquired its distribution rights from Star Brands through merger, purchase of corporate shares, purchase of assets, or another similar arrangement. Plaintiffs filed an interlocutory appeal, and the Illinois Appellate Court affirmed the trial court's denial of the TRO and remanded the case back to the trial court for further proceedings.

According to Plaintiffs, upon remand, Amtec filed a motion to dismiss the 2008 Action. Plaintiffs allege that, in response to Amtec's motion to dismiss, Plaintiffs and the other beer distributors who had filed the 2008 Action filed a motion for leave to take discovery related to Amtec's status as a successor brewer, or

alternatively, to voluntarily dismiss the action. According to Plaintiffs, on August 26, 2008, the trial court granted the motion for voluntary dismissal. Plaintiffs allege that since that time, Plaintiffs "have learned from a credible source that, notwithstanding Amtec's representations to the contrary, Amtec did make a payment to Star Brands at or about the time Amtec acquired the rights to import and distribute Zywiec Beer to wholesalers in, *inter alia*, the State of Illinois." (Compl. Par. 10). Such payment may be relevant to determining whether Amtec is a "successor brewer" under BIFDA since a "successor brewer" is "any person who in any way obtains the distribution rights that a brewer, non-resident dealer, foreign importer, or master distributor once had to manufacture or distribute a brand or brands of beer whether *by merger, purchase of corporate shares, purchase of assets, or any other arrangement,* including but not limited to any arrangements transferring the ownership or control of the trademark, brand or name of the brand." 815 ILCS 720/1.1. On August 24, 2009, Plaintiffs filed the instant action against Amtec in the Circuit Court of Cook County, Illinois, based on the "newly-discovered and quite significant evidence." (Compl. Par. 10). Plaintiffs include in their complaint state law claims for violations of BIFDA. On October 1, 2009, Amtec removed the instant action to this court. Amtec has now moved to dismiss the BIFDA claims.

# LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

**DISCUSSION**

I. Plaintiffs' New Allegation and Prior Judicial Admissions

Amtec argues that the instant action should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs' allegation relating to Amtec's payment to Star Brands "at or about the time Amtec acquired the rights to import and distribute Zywiec" (Compl. Par. 10) is not only vague, but also "impermissibly contradict[s]" judicial admissions that Plaintiffs made in the Verified Complaint and Second Amended Verified Complaint that Plaintiffs filed in the 2008 Action. (Mot. Par. 7). According to Amtec, both verified pleadings stated that Amtec had acquired its rights to import and distribute Zywiec directly from the manufacturer. Amtec argues that Plaintiffs' prior allegations that Amtec acquired its rights to import and distribute Zywiec directly from the manufacture constitute judicial admissions "that cannot be contradicted in a later pleading unless they are formally withdrawn based on a finding of mistake or inadvertence." (Mot. Par. 8). In general, "judicial admissions are formal concessions in the pleadings that are binding upon the party making them," and thus judicial admissions "have the effect of withdrawing a fact from contention." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). However, a judicial admission from a pleading filed in one lawsuit does not constitute a judicial admission in a separate action, and is therefore "not binding or

conclusive" with respect to the separate action. *Enquip, Inc. V. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). Instead, a judicial admission made in one action is "admissible and cognizable as an admission in another [action]," but only as evidence. *Id.*; *see also Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996)(stating that "a statement made in one lawsuit cannot be a judicial admission in another" and that "[i]t can be *evidence* in the other lawsuit, but no more")(emphasis in original).

Plaintiffs voluntarily dismissed the 2008 Action pursuant to 735 ILCS 5/2-1009, and filed the instant action pursuant to 735 ILCS 5/13-217. Under Illinois law, a voluntary dismissal of an action "terminates an action in its entirety." *Curtis v. Lofty*, 914 N.E.2d 248, 259 (Ill App. Ct. 2009). If a plaintiff subsequently recommences an action following a voluntary dismissal, the "original and refiled actions are completely distinct actions." *Dubina v. Mesirow Realty Development, Inc.*, 687 N.E.2d 871, 875 (Ill. 1997); *see also Hudson v. City of Chicago*, 889 N.E.2d 210, 214 (Ill. 2008)(stating that "[o]nce the voluntary dismissal was entered, [the first action] was terminated in its entirety," and the filing of a subsequent action by plaintiff "was *not* a continuation of [the first action], but [was] rather an entirely new action")(emphasis in original); *Wilson v. Brant*, 869 N.E. 2d 818, 823 (Ill. App. Ct. 2007)(rejecting the contention that refiling of a case after voluntary dismissal is a

"re-commencement" of the prior action and stating that "a complaint brought pursuant to [735 ILCS 5/13-217] is a new action"). Thus, Plaintiffs' judicial admissions in the 2008 Action are not binding and conclusive for the purposes of this action.

Amtec relies on *Yarc v. American Hospital Supply Corporation*, 307 N.E.2d 749 (Ill. App. Ct. 1974) to support its argument that Plaintiffs' statements from the 2008 Action constitute judicial admissions with respect to the instant action. (Mot. Par. 34). However, *Yarc* addressed statements contained in a plaintiff's initial verified complaint that continued to bind the plaintiff after the plaintiff filed an amended complaint in the same action. 307 N.E.2d at 752-53. *Yarc* did not address the effect of refiling an action following a voluntary dismissal. Amtec also cites Illinois Supreme Court Rule 216(e) (Rule 216(e)), and Illinois Supreme Court Rule 219(e)(Rule 219(e)) in support of its argument that Plaintiffs' statements from the 2008 Action remain judicial admissions in the context of the instant action. (Reply Par. 8-11). Rule 216(e) provides that a judicial admission made within a request to admit remains in effect even after a case has been voluntarily dismissed and refiled pursuant to 735 ILCS 5/13-217. Ill. Sup. Ct. Rule 216(e). However, Rule 216(e) states that it is applicable only to an "admission made by a party pursuant to [a] request" to admit. *Id.* The statements at issue in the instant action were made in the

Verified Complaint and Second Amended Verified Complaint Plaintiffs filed in the 2008 Action, not in a response Plaintiffs made to a request to admit. Thus, Rule 216(e) has no bearing on whether Plaintiffs' statements constitute judicial admissions for the purpose of this action. Rule 219(e) permits a court to consider discovery undertaken, misconduct related to discovery, and discovery orders entered in prior litigation when setting discovery deadlines and making discovery rulings in a new action. Ill. Sup. Ct. Rule 219(e). Rule 219(e) relates only to discovery, and therefore has no relevance in this case.

Even if the statements Plaintiffs made in the 2008 Action could be considered judicial admissions in the instant action, such admissions would be withdrawn by virtue of Plaintiffs' voluntary dismissal of the 2008 Action. *See Bartsch v. Gordon N. Plumb, Inc.*, 485 N.E. 2d 1105, 1112 (Ill. App. Ct. 1985)(stating that "as pleadings in another action which were, in fact, withdrawn by virtue of [plaintiff's] voluntary dismissal of the earlier action, the complaints were properly admitted as admissions against interest; they did not, however, constitute judicial admissions"). Thus, Amtec's contention that Plaintiffs have not formally withdrawn the two verified complaints filed in the 2008 Action is inapposite. Furthermore, as Amtec has stated in its briefs, to withdraw a verified pleading, a party must allege facts in a subsequent pleading demonstrating mistake or inadvertence. *American National Bank & Trust*

*Company of Chicago v. Erickson*, 452 N.E.2d 3, 6 (Ill. App. Ct. 1983). Plaintiffs have satisfied this requirement by alleging in this case that they "have learned from a credible source that, notwithstanding Amtec's representations to the contrary, Amtec did make a payment to Star Brands at or about the time Amtec acquired the rights to import and distribute Zywiec Beer to wholesalers in, *inter alia*, the State of Illinois." (Compl. Par. 10). Amtec argues that Plaintiffs' allegation is too vague and Amtec points out that Plaintiffs have not specifically alleged in their complaint in this case that Amtec purchased its rights from Star Brands. However, such a specific allegation is not required under Federal Rule of Civil Procedure 8(a). Instead, Plaintiffs' complaint must merely "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Twombly*, 550 U.S. at 570). Thus, whether based on Plaintiffs' voluntary dismissal of the 2008 Action or Plaintiffs' new allegation, which indicates that Plaintiffs made a mistake in the verified pleadings Plaintiffs filed in connection with the 2008 Action, the result is the same. Plaintiffs' statements in the 2008 Action may only constitute evidence in this action. They cannot constitute conclusive judicial admissions.

II. Existence of an Agreement

Amtec also argues that Plaintiffs have failed to state a claim upon which relief can be granted because Plaintiffs have not alleged in their complaint the existence of any agreement between Plaintiffs and Star Brands related to the distribution of Zywiec. (Mot. Par. 37). BIFDA applies to "every *agreement* between brewers and wholesalers and . . . govern[s] all relations between brewers and their wholesalers." 815 ILCS 720/2(B)(emphasis added). Under BIFDA, an agreement means "any contract, agreement, [or ] arrangement . . . whether expressed *or implied*, whether oral or written, for a definite or indefinite period between a brewer and a wholesaler pursuant to which a wholesaler has been granted the right to purchase, resell, and distribute as wholesaler or master distributor any brand or brands of beer offered by a brewer." 815 ILCS 720/1.1(2)(emphasis added). Although Plaintiffs have not explicitly alleged the existence of an agreement between Plaintiffs and Star Brands, they have alleged sufficient facts to support a reasonable inference that an agreement, as defined under BIFDA, existed between Plaintiffs and Star Brands. For example, Plaintiffs allege that between April 2005 and late 2007, Plaintiffs purchased Zywiec from Star Brands and sold it at wholesale within "exclusive geographic territories." (Compl. Par. 1). Plaintiffs also allege that certain Plaintiffs paid Star Brands $528,000 for the "exclusive right" to distribute Zywiec. (Compl. Par. 2). In

addition, Plaintiffs make multiple references to the distribution agreements between the parties. (Compl. Par. 22). Thus, Plaintiffs have adequately pled the existence of at least an implied beer distribution agreement between Plaintiffs and Star Brands.

III. Collateral Estoppel

Finally, Amtec argues that the Illinois Appellate Court's decision in the 2008 Action has a collateral estoppel effect on the instant action. Amtec states that because the Illinois Appellate Court found that Amtec was not a successor brewer under BIFDA, Plaintiffs must be barred "from relitigating the issue of whether Amtec is a 'successor brewer' based on the doctrine of collateral estoppel." (Mot. Par. 42). In determining whether a state court ruling has a collateral estoppel effect in a later federal court case, a federal court should apply "the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004); *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009). Under Illinois law, the minimum threshold requirements for a ruling to have collateral estoppel effect are "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005).

Amtec's collateral estoppel argument relates to the decision of the Illinois Appellate Court that was rendered in the context of an interlocutory appeal brought after the trial court denied Plaintiffs' motion for a TRO. Amtec argues that the record before the Illinois Appellate Court was extensive, and that therefore the Illinois Appellate Court's decision should have a collateral estoppel effect. In this instance, the extent of the record is not determinative. Illinois law clearly provides that "controverted facts or the merits of a case are not decided where . . . an interlocutory appeal is brought pursuant to Supreme Court Rule 307(a)(1)." *Caudle v. Sears, Roebuck & Co.*, 614 N.E.2d 1312, 1315 (Ill. App. Ct. 1993); *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 492 N.E.2d 969, 974 (Ill. App. Ct. 1986)(stating that "a reviewing court will not reach the merits in an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1)… as the only justiciable issue is whether the trial court properly granted the preliminary injunction"); *Cameron v. Bartels*, 573 N.E.2d 273, 276 (Ill. App. Ct. 1991)(stating that "[a]n interlocutory appeal from an order granting a preliminary injunction does *not* bring the merits of the controversy before the reviewing court")(emphasis in original); *Lonergan v. Crucible Steel Co. of America*, 229 N.E.2d 536, 542 (Ill. 1967)(stating that "[i]t is not, of course, the purpose of a temporary injunction to decide controverted facts or the merits of the case"); *Hill v. Village of Pawnee*, 305 N.E.2d 740, 741 (Ill. App. Ct. 1973)(stating that "it is the general rule that merits of the case are not brought before

a reviewing court by interlocutory appeal"). The interlocutory appeal upon which Amtec relies was clearly brought by Plaintiffs pursuant to Illinois Supreme Court Rule 307(a)(1) (Rule 307(a)(1)), which specifically provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court: (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. Sup. Ct. Rule 307(a)(1). Thus, the decision of the Illinois Appellate Court in the 2008 Action does not have a collateral estoppel effect.

Amtec cites *Graley v. Columbia LaGrange Hospital*, 881 N.E. 2d 370 (Ill. App. Ct. 2007), for the proposition that an interlocutory appeal can have a collateral estoppel effect. (Mot. Par. 14). However, *Graley* does not relate to an interlocutory appeal brought pursuant to Rule 307(a)(1), but rather relates to an interlocutory appeal brought pursuant to Illinois Supreme Court Rule 306. *Id.* at 373. Thus, *Graley* is inapposite, and Amtec's reliance on *Graley* is therefore misplaced. The doctrine of collateral estoppel does not preclude Plaintiffs in this case from litigating the issue of whether Amtec is a successor brewer under BIFDA.

IV. Consideration of the Record from the 2008 Action

We note that to support its arguments related to Plaintiffs' earlier judicial admissions and the collateral estoppel effect of 2008 Action, Amtec has attached the

record from the 2008 Action to its motion to dismiss. For a motion to dismiss pursuant to Rule 12(b)(6), with limited exceptions, the focus is solely upon the allegations in the complaint. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)(stating that "[w]hen ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint"). However, the court may take judicial notice of matters of public record, such as public court documents, and may consider such documents without converting the Rule 12(b) motion to dismiss into a Federal Rule of Civil Procedure 56 motion for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994). Thus, in ruling on Amtec's motion to dismiss, we have considered the record from the 2008 Action.

The record related to the 2008 Action includes the affidavit of Amtec's President, Boguslaw Pajor, who stated therein that Amtec acquired its import rights directly from the manufacturer and did not acquire its import rights from Star Brand. (Ex. C, 120-21). The record also includes letters from the manufacturer terminating its relationship with Star Brands (Ex. C, 38) and certifying that Amtec became the sole importer of Zywiec effective January 24, 2008 (Ex. C, 35). In addition, the record includes withdrawal statements filed by Star Brands with the Illinois Liquor Control Commission (Ex. C, 132-40), which according to Amtec, show that it was Star Brands who withdrew Plaintiffs' distribution rights, and that therefore "any allegations by Plaintiffs that [Plaintiffs' distribution rights] were terminated by Amtec, and not by Star Brands, are incorrect". (Mot. Par. 13). Given Plaintiffs'

allegation that "*notwithstanding Amtec's representations to the contrary*, Amtec did make a payment to Star Brands at or about the time Amtec acquired the rights to import and distribute Zywiec Beer to wholesalers in, *inter alia*, the State of Illinois," (Compl. Par. 10)(emphasis added), the record from the 2008 Action is non-dispositive. At this juncture, Plaintiffs have alleged sufficient facts to defeat a motion to dismiss. At the summary judgment stage, Plaintiffs will have to point to sufficient evidence to support their claims. Therefore, we deny Amtec's motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we deny Amtec's motion to dismiss.

    _____
    Samuel Der-Yeghiayan
    United States District Court Judge

Dated: February 24, 2010